# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **MARY WANJIKU THOMAS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22CV00036 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **VIRGINIA DEPARTMENT OF** | ) | JUDGE JAMES P. JONES |
| **TRANSPORTATION (BRISTOL** | ) | |
| **DISTRICT),** | ) | |
| Defendant. | ) | |

*Mary Wanjiku Thomas, Pro Se Plaintiff; Faith A. Alejandro and Katie DeCoster, SANDS ANDERSON PC, Richmond and Christiansburg, Virginia, for Defendant.*

In this employment case, Mary Wanjiku Thomas, proceeding pro se, sues her employer, the Virginia Department of Transportation (VDOT), claiming that she was and continues to be discriminated against based on her race, color, national origin, and disability. She asserts claims for violations of Title I of the Americans with Disabilities Act of 1990 (ADA), Title VII of the Civil Rights Act of 1964 (Title VII), and the Virginia Human Rights Act (VHRA). VDOT has moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). After careful consideration of the parties' submissions, I will grant the Motion to Dismiss.

I.

After receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC) dated July 11, 2022, Thomas filed her initial Complaint on October 6, 2022.  She was allowed by the magistrate judge to amend the Complaint to provide additional factual detail necessary to support her allegations.  The court's Order directed that the amended complaint "include the following types of information: relevant dates and places and a chronological sequence of events — what action each specific employee or representative of VDOT undertook in violation of her rights."  Jan. 3, 2023, Order 2, ECF No. 11. Thomas filed her Amended Complaint on January 20, 2023.  She also attached an Exhibit to the Amended Complaint that includes additional facts.[1]

I begin with the relevant, undisputed facts contained in Thomas's EEOC Charge of Discrimination (Charge) and in VDOT's EEOC Position Statement.[2]

> Ms. Thomas was hired on September 1, 2016, as a contract worker through Premier Staffing Sources, Inc. to perform receptionist duties to include answering the switchboard for the Bristol District Office.  There was a need for a fiscal technician, wage position to assist Debby Teasley, Telecommunications Coordinator.  Ms. Thomas was selected

---

[1]   While the Amended Complaint and attached exhibits contain more factual allegations then the initial Complaint, they still fail to provide the dates of all the alleged discriminatory conduct and fail to tie some of the alleged conduct to particular VDOT employees.

[2]   It appears that Thomas's Charge may have been prepared in an attorney's office, although only signed by Thomas.  Regretfully, Thomas has no present lawyer.  Because she is proceeding pro se, I have construed her claims liberally.

> as a good fit for those duties and became a wage employee for VDOT on February 6, 2017.  On January 10, 2018, she began her new job as Administrative Assistant to perform the receptionist duties for the Bristol District. Her supervisor is Tina Neal, Executive Assistant for District Engineer Randy Hamilton.

Compl. Ex. CC, Position Statement 1, ECF No. 1-4.

> Ms. Thomas received a Bachelor of Business Administration degree in May 2016 and a Master of Business Administration degree in May of 2020.  Ms. Thomas has also completed several online training courses through the Virginia Department of Transportation University ("VDOTU").  Specifically, from February 2017 through December 2020, Ms. Thomas completed 76 courses through VDOT University's virtual campus.

*Id.*, Ex. AA, Charge 1, ECF No. 1-1.

Additional facts alleged by Thomas, which I must consider as true at this juncture, are summarized as follows.

Thomas is Black and is a naturalized United States citizen from Kenya.  In 2017, VDOT's local Civil Rights Manager, MaryAnn Autumn, recommended that Thomas apply for a full-time position in the agency, doing the same work she had done as a contract employee.  VDOT offered Thomas the job, but the agency offered Thomas a minimum salary, with the explanation that the position did not require an academic degree.

From 2017 to 2021, Thomas unsuccessfully applied for numerous VDOT jobs.  Her supervisor, Tina Neal, and other managers, Connie Hope and Amy Carter, told Thomas that despite her academic advancement, her education "doesn't count."

Am. Compl. Ex. E at 1, ECF No. 12-1.[3]  Hope also told Thomas that "she did [her] a favor [by hiring her] as a receptionist."  *Id.*

Some of the positions for which Thomas applied include Fiscal Tech (2017), Traffic Fiscal Tech (January 2017), Business Coordinator (July 2017), Procurement Officer (August 2018), and Maintenance Program Manager (July 2019).  Thomas asserts that VDOT rejected her applications and then hired white applicants with little to no experience instead.  She also alleges that the hiring manager for the Procurement Officer position, Diane Fair, "made racist comments against [her]."  *Id.* Thomas also unsuccessfully applied for several human resources positions, including Human Resources Benefits Specialist (November 2020), Human Resource Manager (November 2020), Human Resource Consultant Senior (November 2020), Senior Row Agent (February 2021), and Talent Acquisition Supervisor (February and June 2021).  These positions were also given to white people who Thomas avers lacked experience and education in human resources.

Furthermore, management promoted undisclosed white employees who received financial assistance for education from the agency, but management did not treat her similarly.  They purportedly refused to promote Thomas despite her advanced degree, high GPA, and experience.  Thomas requested a transfer to another

---

[3] I have used the ECF designated page numbers when referring to Exhibit E of the Amended Complaint.

VDOT office to fill a Fiscal Technician position.  Instead, VDOT offered her other lesser positions.  She declined the offers and remained in her receptionist position.

Thomas brought an internal civil rights complaint to MaryAnn Autumn in 2017, alleging discrimination based on race, color, and national origin, but Autumn found that the allegations were unfounded.  Sometime thereafter, the VDOT District Engineer, Randy Hamilton, told another co-worker to say that Thomas was incompetent so that VDOT could fire Thomas.  Hope and Neal also accused Thomas "of stealing checks as much as $42,000 in one check," and Hope accused Thomas of making her feel threatened, "something co-workers told [Thomas] [Hope] used on minorities whom she fired or left the organization."  *Id*. at 4.

Furthermore, Neal admonished Thomas for allowing a young Black child to use the restroom, even though Thomas and the child's mother followed protocol.  At some undefined time, another coworker, Mary Monroe, called Thomas a socialist and an "Obamalist," *id*. at 6, and in 2018, someone removed the mailbox from Thomas's workspace.  In February 2018, District Engineer Hamilton told Thomas to stop comparing herself to white co-workers and to go to Richmond, Virginia, with "[her] kind of people." *Id*. at 4.  Another employee, Paul Sisk, attempted to get Thomas to do his work "because it was beneath him," and he compared Thomas to another Black woman.  *Id*. at 6.  VDOT also de-activated Thomas's account two weeks after she went on short-term disability, which is against the VDOT policy that

provides that deactivation is to occur in 90 days and that employees should still have access to their retirement account. At some point, someone put rotten eggs in Thomas' lunchbox while she was on break. When Thomas told Neal about the incident, Neal laughed and said, "maybe someone had decided to give [Thomas] some more food." *Id.* at 4.

Thomas also alleges that Hope and Neal have refused to accommodate her disabilities so that she can perform her receptionist duties. Thomas avers that she has a compromised immune system and that she suffers from depression, anxiety, panic attacks, migraines, insomnia, and stomach ulcers, all of which impact her ability to sleep and have caused an undefined imbalance. In January 2018, Hope and Neal eliminated Thomas's two 15-minute breaks, breaks she needed to stretch as an accommodation after an injury. Hope and Neal also refused to allow Thomas to telework like the rest of the employees during the peak of the COVID-19 epidemic, despite Thomas's compromised immune system. Thomas's physician faxed notes to the Human Resource Department at VDOT supporting her claims about the deterioration of her emotional health several times in 2020 and 2021. In January 2022, a VDOT manager told Neal to accommodate Thomas's disabilities by restructuring other coworkers' duties so that those coworkers could assist Thomas with completing her assignments, but Neal declined to enact this accommodation.

On January 21, 2022, Thomas asked for leave to go home because of an offending odor.  Neal entered Thomas's office to determine the source of the smell. Neal then asked to smell Thomas's lunch and compared the smell from Thomas's lunch to a garbage dump, humiliating Thomas.  Thomas also accuses Neal and another employee named Donny of pressuring Thomas to disclose her COVID vaccination status and accuses Neal of arguing that Thomas did not have compromised immune system.  Although not entirely clear, the Amended Complaint suggests that Thomas continues to work at VDOT, and Thomas alleges that she continues to experience discrimination and retaliation.

Thomas now sues VDOT pursuant to the ADA, Title VII, and the VHRA, claiming a failure to hire or promote, retaliation, unequal terms and conditions of employment, and "Harassment by Management and co-workers," Am. Compl. 4, ECF No. 12, based on Thomas's race, color, national origin, and disabilities, as well as a failure to accommodate Thomas's disabilities.  VDOT argues that the Amended Complaint must be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  The Motion to Dismiss is fully briefed and is now ripe for determination.

## II.

A Rule 12(b)(1) motion challenges the court's authority to proceed with a case, raising a jurisdictional bar.  *Cunningham v. Gen. Dynamics Info. Tech., Inc.*,

888 F.3d 640, 649 (4th Cir. 2018).[4]  The plaintiff bears the burden of establishing that subject-matter jurisdiction exists when a defendant challenges jurisdiction. *Evans v. B.F. Perkins Co*., 166 F.3d 642, 647 (4th Cir. 1999).

When deciding a motion to dismiss under Rule 12(b)(6), the court's "inquiry is to determine whether the facts alleged in the plaintiff's complaint are legally sufficient to state a claim upon which relief can be granted."  *Fessler v. Int'l Bus. Machines Corp.*, 959 F.3d 146, 151–52 (4th Cir. 2020).  "Because only the legal sufficiency of the complaint, and not the facts in support of it, are tested under a Rule 12(b)(6) motion, [the court] assume[s] the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Id.*  "To survive a motion to dismiss, [the court] require[s] 'only enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  However, a complaint must contain "more than the speculative possibility of the defendant's liability."  *Trail v. Gen. Dynamics Armament & Tech. Prods., Inc.*, 697 F. Supp. 2d 654, 657 (W.D. Va. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

---

[4]  I have omitted internal quotation marks, citations, and alterations throughout this opinion unless otherwise noted.

III.

A.    *Thomas's ADA Claims and Sovereign Immunity.*

I begin with Thomas's disability discrimination and failure to accommodate claims brought pursuant to the ADA and VDOT's assertion that it is insulated from suit under the Eleventh Amendment and state sovereign immunity.[5]

The Eleventh Amendment guarantees that nonconsenting states and their agents and instrumentalities cannot be sued for money damages by private individuals in federal courts. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2014); *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). State sovereign immunity is a related but broader concept. *Stewart v. North Carolina*, 393 F. 3d 484, 487–88 (4th Cir. 2005) (noting that Eleventh Amendment immunity is an example of state sovereign immunity). As a general rule, the Commonwealth of Virginia is immune both from private actions for damages and from private actions seeking to restrain governmental action or to compel such action. *Hinchey v. Ogden*, 307 S.E.2d 891, 894 (1983). As a state agency, this general rule applies to VDOT. *Michael v. Va. Dep't of Transp.*, No. 3:21CV764, 2022 WL 3569004, at *4 (E.D.

---

[5] VDOT properly raises this issue under Rule 12(b)(1). *Cunningham*, 888 F.3d at 649 (discussing government contractor immunity); *Drewrey v. Portsmouth City Sch. Bd.*, 264 F. Supp. 3d 724, 727 (E.D. Va. 2017) (considering sovereign immunity issues under Rule 12(b)(1)).

Va. Aug. 18, 2022) ("As an instrumentality of the state, the doctrine of sovereign immunity generally protects VDOT from private suits").

There are exceptions. A plaintiff can defeat a state's claim of immunity in federal court if: (1) Congress has abrogated the immunity; (2) the state expressly consents or waives its immunity; or (3) the plaintiff seeks only prospective or injunctive relief against a state agent. *Id.*

Here, Thomas cannot overcome VDOT's sovereign immunity because none of these exceptions apply. First, in enacting Title I of the ADA,[6] Congress did not abrogate sovereign immunity. *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019) (stating that "the Supreme Court has held that Congress exceeded its authority" when it attempted to abrogate state sovereign immunity for Title I of the ADA). Second, the state has not consented to be sued in state or federal court. *Id.* at 248. Third, Thomas is seeking monetary damages in addition to prospective and injunctive relief against the state entity and not against a state official; thus, the third exception — also known as the *Ex Parte Young* exception — does not apply. *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 242 (4th Cir. 2020) (exception applies

---

[6] Thomas's Amended Complaint cannot be construed as having been brought under Title II of the ADA, because Title II does not extend to public employment discrimination claims. *Reyazuddin v. Montgomery Ctny.*, 789 F.3d 407, 419–20 (4th Cir. 2015).

when suit is brought against state officials, and not state agencies, which retain immunity).  Accordingly, I will dismiss the ADA claim.[7]

### B. Title VII Claims and Rule 12(b)(6).

Thomas also sues under Title VII, alleging discrimination and retaliation based on race, color, and national origin.  VDOT argues that the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because some claims are time-barred, Thomas failed to exhaust her administrative remedies as to certain claims, and finally because the Amended Complaint is otherwise legally insufficient to establish Title VII discrimination or retaliation.

I begin with the statute of limitations issue.  Under Title VII, an employee must first file an EEOC charge before filing suit.  The law requires that Virginia employees file such a charge within 300 days of the alleged discriminatory act.  42

---

[7]   Thomas arguably could have asserted a claim under Section 504 of the Rehabilitation Act (RA), which applies to state agencies accepting federal funds, 29 U.S.C. § 794.  A state or state agency is not immune from suit under the RA.  42 U.S.C. § 2000d-7; *Barnes v. Gorman*, 536 U.S. 181, 185 (2002).  The RA elements of proof follow that of the ADA.  *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012).  Plaintiffs must plausibly allege that: (1) they have a disability; (2) they are otherwise qualified for the employment; and (3) that they were excluded from employment or promotion because of discrimination solely based on the disability.  *Doe v. Univ. Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995).  RA retaliation claims require plaintiffs to plausibly allege that they engaged in a protected activity, that the defendant took an adverse action against the defendant, and the existence of a causal connection between the protected activity and adverse action.  *S.B. ex rel. A.L. v. Bd. of Educ.*, 819 F.3d 69, 78 (4th Cir. 2016).  Even if Thomas had invoked the RA, she has not alleged sufficient facts to plausibly state a claim for relief.

U.S.C. § 2000e-5(e)(1); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002). "Any subsequent complaint in federal court can only be premised on acts of discrimination that occurred within the applicable limitations period." *Gilliam v. S.C. Dep't of Juv. Just.*, 474 F.3d 134, 139 (4th Cir. 2007). Discrete acts of discrimination or retaliation, which are isolated and solitary in nature, that occurred prior to the 300-day limitations period are time-barred, even if they relate to an incident that occurred within the limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111–13 (2002). In contrast, if the continuing violation doctrine applies, the claim can be supported by acts that occurred outside the limitations period as long as at least one of the acts contributing to the continuing violation occurred within the limitations period. *Id.* at 117.

Thomas filed her Charge on April 27, 2021, meaning the applicable limitations period began in July 2020. Most of the acts of which Thomas complains occurred prior to July 2020. For example, Thomas alleges that from 2017 through July 2019, she unsuccessfully applied for several positions or was offered demotions. Thomas claims that managers rejected her applications, and then hired white applicants with little to no experience instead. Failure to promote or refusal to hire are discrete acts, constituting separate actionable employment practices. *Morgan*, 536 U.S. at 114. Accordingly, I agree with VDOT that the failure to

promote, hire, and demotion claims occurring before July 2020 incidents are time-barred.

Thomas alleges numerous other incidents that either occurred prior to July 2020 or are undated. Thomas's "Harassment by Management and co-workers," construed liberally, invokes hostile work environment. Thus, any alleged incidents of harassment contributing to a hostile work environment might be saved by the continuing violation doctrine if any other acts contributing to the continuing violation occurred within the limitations period. *Id.* at 117.

Thomas's post-July 2020 allegations include her claims that she was not hired for certain human resources jobs. However, as discussed *infra*, there are no facts alleged to plausibly suggest VDOT's decisions to not hire Thomas for certain jobs were based on Thomas's protected class status. Therefore, I find such assertions are not acts of continuing hostile conduct to which any pre-July 2020 allegations should be anchored.

Thomas's other dated post-July 2020 allegations are that she was required to work in the office in July 2020 during COVID despite her health conditions, that Thomas's supervisor Neal compared the smell of Thomas's lunch to a landfill, and that Neal refused to restructure other coworkers' duties to accommodate Thomas's disabilities. I find that the allegations regarding VDOT's mandate that Thomas work in the office and Neal's alleged failure to accommodate Thomas should be construed

as conduct supporting Thomas's ADA claims, and therefore are subject to dismissal for the reasons discussed *supra*.  As for Neal's alleged January 2022 comment regarding the smell of Thomas's lunch, I do not find that such conduct contributed to a hostile work environment because it appears to have occurred remote in time from other allegations, *McIver v. Bridgestone Ams., Inc.*, 42 F.4th 398, 408 (4th Cir. 2022) ("[L]arge temporal gaps between allegations undermine a hostile-work-environment claim."), and because the allegation, even construed liberally, is not plausibly related to her protected class status and does not amount anything more than a naked allegation of a protected-class-based hostile work environment. *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585–86 (4th Cir. 2015). Thus, it cannot serve as an anchor for any time-barred conduct that may have contributed to a hostile work environment.  I therefore hold that any pre-July 2020 allegations are time barred.

Furthermore, even if the pre-July 2020 assertions could be saved by the continuing violation doctrine, I still find that Thomas's Title VII claims warrant dismissal under Rule 12(b)(6).

Title VII makes it unlawful for an employer to discriminate against an individual with respect to their compensation, terms, conditions, or privileges of employment because of a person's protected class status, including race, color, or national origin.  42 U.S.C. § 2000e-2.  This includes requiring a person to work in a

hostile work environment, one that "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The statue also makes it unlawful for employers to retaliate against an employee for engaging in protected activity, such as complaining about prior discrimination or retaliation. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).

At this juncture, Thomas need not plead facts establishing a prima facie case of protected class-based discrimination or retaliation, but she is still required to allege facts to satisfy the pleading standard mandated by *Iqbal* and *Twombly*. *Woods v. City of Greensboro*, 855 F.3d 639, 648 (2017). The Amended Complaint fails to satisfy this standard for following reasons.

Much of the Amended Complaint revolves around VDOT's failure to hire Thomas for certain jobs, jobs that were given to non-minorities. Although Thomas states she obtained a master's degree, Thomas does not allege that she was qualified for the positions to which she applied. Further, Thomas does not allege fact suggesting that the individuals hired were less qualified. Instead, "[she] can only speculate that the persons hired were not better qualified, or did not perform better during their interviews, or were not better suited based on experience and personality for the positions." *McCleary-Evans*, 780 F.3d at 586. Her repeated allegations that

she was not hired because of her protected status are conclusory and do not suffice. *Id.* at 587–88.

Thomas also alleges that she was offered a demotion, which she declined. I find that being offered, but not being forced, to take certain jobs, even assuming the jobs would be considered demotions, is not type of discriminatory act encompassed by Title VII. She also asserts that at some point she was not offered a promotion "like everyone," Am. Compl. Ex. E at 2, ECF No. 12-1, but includes no facts to support this allegation.

The allegations supporting Thomas's "Unequal terms and conditions" claim also do not sufficiently state a claim for relief. Am. Compl. Ex. E at 3, ECF No. 12-1. She identifies no similarly situated employees who were treated differently. *Hurst v. District of Columbia*, 681 F. App'x 186, 191 (4th Cir. 2017) (discussing comparators). Although she does allege that when certain named white employees raised concerns "it was addressed quietly," Am Compl. Ex. E at 4, ECF No. 12-1, this assertion is too vague to create a plausible inference that the white employees were similarly situated, nor does the Amended Complaint suggest how the white employees were treated differently than Thomas by having their undefined complaints addressed quietly. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010). Thomas's allegations that her ADA-related claims are associated

with animus based on race, color, or national origin also fail because they too are conclusory.

Moreover, the facts alleged to support Thomas's harassment claim do not rise to the level of a hostile work environment. The incidents are remote in time (or occurred an undeterminable times) and therefore there is no plausible inference of pervasiveness, nor are they severe. *Robinson v. Priority Auto. Huntersville, Inc.,* 70 F.4th 776, 2023 WL 4009506, at *3–4 (4th Cir. 2023) (holding that Black plaintiff being told by other employees to "stop hanging around with those thugs" and "to come over to the white side" insufficient to meet test). While the "her kind of people" and "Obamalist" remarks, as well as Sisk's comparison between Thomas and another Black employee, might have concerned Thomas's race, stray or isolated comments are not sufficient evidence of discrimination. *Id.* Offhand comments and intermittent occurrences, such as those alleged here, are simply not enough to support a hostile work environment claim. *Perkins v. Int'l Paper Co.,* 936 F.3d 196, 210 (4th Cir. 2019). As for the check-theft accusation, Thomas has failed to allege any facts that might plausibly demonstrate that such accusations were lodged against her because of discriminatory animus. The allegation that a hiring manager once stated something racist about Thomas is too vague support a cognizable race discrimination claim.

Thomas also claims that VDOT unlawfully retaliated against her, and she references a 2017 internal civil rights complaint. She cites to Neal's 2022 comment regarding the smell of Thomas's lunch,[8] the check-theft accusations, Hope's alleged comment about feeling threatened by Thomas, the District Engineer's directive to another individual to say that Thomas was mentally incompetent,[9] Neal's admonishment of Thomas after Thomas allowed a Black child to use the restroom in the bathroom, Thomas being told that she did not get a job because she did not know what inventory was, the 2018 removal of the mailbox from Thomas's office, and the early deactivation of her VDOT account. As discussed *supra*, many of these so-called instances of retaliation fail because they are time-barred. Furthermore, several of these allegations, including Neal's comment about the smell of Thomas's lunch, Hope's comment to another employee about feeling threatened by Thomas,

---

[8] Thomas did not raise this allegation as part of her 2021 Charge. The requirement that an employee include claims in the administrative charge serves to provide to an employer with notice and with an opportunity to respond. *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012). The claims contained within a charge define the scope of subsequent litigation. *Id.* If a plaintiff adds claims to litigation before the court that were not presented in the Charge and that the EEOC could not reasonably be expected to unearth through investigation, then the claim is barred for failure to exhaust administrative remedies unless the new claim is reasonably related to the claims in the Charge. *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022). Regardless of the exhaustion issue, I find that the allegation fails to support a plausible Title VII claim for the reasons discussed herein.

[9] Thomas alleges that the District Engineer told someone named Karl Reedy to state that Thomas was incompetent so that VDOT could fire Thomas. It is unclear what role Karl Reedy has at VDOT, and Thomas does not allege in the Amended Complaint that she has been fired from VDOT.

Thomas being told why she did not get a job, and the removal of the mailbox from Thomas's workspace, are not adverse actions because they are not acts that would have dissuaded a reasonable worker from engaging in a protected activity. *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018) (defining retaliatory actions). As such, they do not constitute a plausible basis for a Title VII retaliation claim. *Id.* (indicating that the elements of prima facie Title VII retaliation are that (1) the plaintiff engaged in a protected activity, (2) the employer acted adversely, and (3) the existence of a causal connection between the activity and the adverse action).

Moreover, Thomas has not sufficiently pled a causal connection between any of these so-called instances of retaliation and Thomas's internal complaint of discrimination. The sporadic conduct occurred at either an undeterminable time or over a year (or even several years) after Thomas brought her internal complaint in January 2017. Thus, the temporal proximity involved here does not create a plausible inference of causation. *Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022). Thomas also fails to allege any other facts that could suggest that any of the supposed retaliatory conduct occurred because of the internal complaint or any other potential protected activity. *Id.* at 218.

Thomas seems to include VDOT's refusal to allow her to telework in July of 2020, during the height of the COVID pandemic, as another example of retaliation. She contends that she was denied the opportunity to telework because of her race

while other employees were allowed to work from home.  It is not clear from the pleadings if Thomas was the only minority employee in the agency at that time, but she was the receptionist and the first point of contact for the public.  She does not explain how she could accomplish the duties of a receptionist while working from home.   Without pleading more facts that create an inference of purposeful discrimination or retaliation, her assertions that the decision to require her presence in the building was discriminatory or retaliatory amount to speculation and are conclusory.

*C. State Law Claim.*

Lastly, Thomas contends that VDOT violated the VHRA, Va. Code Ann. §§ 2.2-3900 to 2.2-3909, for the same reasons she alleges the agency violated federal law.  Because all federal claims have failed, I will not exercise supplemental jurisdiction under 28 U.S.C. § 1367, and the state claim will be dismissed without prejudice.

IV.

For the reasons stated, it is **ORDERED** that the Motion to Dismiss, ECF No. 14, is GRANTED.  Because the plaintiff has been given an earlier chance to amend, the dismissal of the federal claims will be with prejudice.  As noted, the dismissal of the state claim will be without prejudice.  A separate judgment will be entered herewith.

ENTER:  July 5, 2023

/s/  JAMES P. JONES
Senior United States District Judge